IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN R. JONES, JR.** | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **No. 23-4879-KSM** |
| **BRISTOL TOWNSHIP, et al.,** | |
| Defendants. | |

**MEMORANDUM**

**MARSTON, J.**                                                                              **March 31, 2026**

Pro se Plaintiff John Jones Jr. brings this action against a litany of public officials and private citizens alleging constitutional and statutory violations related to his two arrests in December 2021 and February 2022.  (*See* Doc. No. 60.)  Plaintiff's Third Amended Complaint ("TAC") envisions a grand conspiracy—or as he calls it—a "war", facilitated by the Wagners, including Jeffrey Wagner[1], Alexus Wagner, Kevin Wagner Sr., Maryanne Wagner[2], and Robert Wagner Jr., a purportedly prominent Bucks County family, to have Plaintiff incarcerated and his dog killed because of his alleged whistleblowing activities.  (*Id.* at 3, 8.)  Plaintiff claims that the Wagners and other Defendants named in the TAC have "ruined [his] life with a conspiracy designed to do [him] significant harm."  (*Id.* at 5.)

---

[1] Plaintiff incorrectly identifies this Defendant as "Jeffery Wagner" in the caption of his Complaint. (*See* Doc. No. 60 at 1.)

[2] Plaintiff incorrectly identified this Defendant as "Maryann Wanger" in the caption of his Complaint. (*See* Doc. No. 60 at 1.)

1

Presently before the Court are two issues.  First, Plaintiff has failed to file proof of proper service for many of the Defendants[3] in this matter despite the Court previously warning him that his failure to do so would result in dismissal of his claims as to those Defendants.  Second, those Defendants who have been served, or otherwise have received notice of this action, have filed motions to dismiss Plaintiff's TAC in its entirety.[4]  (*See* Doc. Nos. 66. 68, 69, 70, 82, 84, 86, 94, 98, 99, 104.)  For the reasons set forth below, the Court will dismiss Plaintiff's TAC against the unserved defendants and grant all of the Moving Defendants' motions to dismiss.

## I.    FACTUAL BACKGROUND

Plaintiff's TAC[5] consists of 103 pages of repetitive, largely incoherent, and disjointed allegations which fail to present a clear narrative of the events at issue.  Plaintiff himself

---

[3] These Defendants include House Representative Brian Fitzpatrick, Troy Bodolus, Wallace H. Bateman Jr., Jeffrey L. Finely, Neshaminy School District, the Federal Bureau of Investigations ("FBI"), Kevin Burns, and Brian Galloway.

[4] These Defendants include PrimeCare Medical, Inc. (Doc. No. 66); Bristol Township (Doc. No. 68); Middletown Township and Officer Jeffrey Wagner (Doc. No. 69); Maryanne Wagner (Doc. No. 70), Jason Mancuso, Ashley McCabe, Emilyann Maialetti, Robert Coulton, Sean Cosgrove, Randee Elton (collectively "Individual Bristol Defendants") (Doc. No. 82), Middletown Township, Joseph Bartorilla, Michael Lubold, Jeffrey Wagner, Megan Freer, John Beck, Edward DiFrank (collectively, the "Middletown Defendants") (Doc. No. 84), Tina Davis (Doc. No. 86), Troy Bodolus and Neshaminy School District (Doc. Nos. 94, 104), and the Pennsylvania Attorney General (Doc. No. 99) (collectively, the "Moving Defendants").

[5] Plaintiff has also filed dozens of pages of written and video "exhibits" and letters to the Court since filing his TAC.  (*See, e.g.*, Doc. Nos. 100–06)  He also filed a "Motion for Exhibits" on September 27, 2025, which asked the Court to take judicial notice of his submitted exhibits as part of his TAC. (Doc. No. 98.)  "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).  An exception to the general rule is that "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Peele v. Delaney*, No. 12-cv-4877, 2017 WL 467347, at *4 n.4 (E.D. Pa. Feb. 3, 2017).  However, Plaintiff's "exhibits" were not attached to his TAC but rather filed on a continuous basis after the Court deemed his TAC the operative Complaint in this matter on May 16, 2025.  (*See* Doc. No. 63.)  And his specific Motion for Exhibits was filed over four months *after* his TAC was filed.  (*See* Doc. Nos. 60, 98.)

acknowledges that he has "[l]umped" together issues by Defendants.  (Doc. No. 60 at 4.)

Nevertheless, from what the Court can glean from this filing, it appears that the factual

predicates for Plaintiff's claims are as follows:

At some time in 2021, Plaintiff was stopped on two different occasions by Middletown

Police Officers Megan Logan Freer and Edward DiFrank for walking his service dog, Holly, on

the grounds of Walter Miller Elementary School.  (Doc. No. 60 at 18–19.)  Officer DiFrank

allegedly issued a citation to Plaintiff and threatened to have Plaintiff's truck towed.  (Doc. No.

60 at 19.)

Some time later, Plaintiff received a letter from the Neshaminy School District Chief of

Security Kevin Burns which stated the following:

> It has been brought to my attention that you have been parking your
> vehicle on Walter Miller Elementary School Property during school
> hours.  Please be advised that no one is permitted on the property
> except for school business during school hours.

(*Id.* at 18.)

On December 11, 2021, Plaintiff was again on school property, and again walking his

service dog Holly, when he was encountered by Defendant John Beck, another Middletown

---

Thus, the Court **DENIES** Plaintiff's motion and does not consider these exhibits when ruling on the Moving Defendants' motions.

And, to the extent Plaintiff is relying on the exhibits attached to his original Complaint, the Court will not consider this material because "an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (finding that the district court should not have examined allegations in the original complaint when ruling on a motion to dismiss the amended complaint and noting that "liberal construction of a pro se amended complaint does not mean accumulating allegations from superseded pleadings.").  Moreover, the Court has had some difficulty identifying discrete documents that may support Plaintiff's claims, and Plaintiff has failed to direct the Court's attention to any specific evidence integral to the claims asserted in his TAC.  Thus, the Court finds it would be improper to rely on, and credit Plaintiff's improper creation of, this voluminous record in the resolution of the pending motions.

Police Officer. (*Id.* at 24, 60.) Beck approached Plaintiff and allegedly stated, "It's my understanding you're not allowed on this property," but he did not issue a citation to Plaintiff. (*Id.* at 24.) Fifteen minutes later, Plaintiff encountered Defendants Jeffrey Wagner and Michael Lubold, who also serve as Middletown Township Police Officers. (*Id.* at 53, 62.) According to Plaintiff, Officer Wagner told Plaintiff, "I just read the letter and it says you're only allowed on school property if you have school business during school hours, which means you're not allowed on the property at all." (*Id.* at 28.) Officer Wagner then arrested Plaintiff. (*Id*. at 54, 62.) Plaintiff asserts that his left shoulder was significantly injured during this arrest, a pocket knife was seized and stolen from him, and his dog Holly was injured. (*Id.* at 26–27.) Plaintiff was charged with defiant trespassing in violation of 18 Pa. Cons. Stat. § 3503(B)(1) and released from police custody later that day.[6] (*Id.* at 3, 7, 9.)

Plaintiff further alleges that a few months later, on January 29, 2022, he was assaulted by a "Wagner family member" and called 911—but no action was taken. (Doc. No. 60 at 3.) Then, just a few days later, on February 3, 2022, Plaintiff was arrested for stalking and harassment, due to "taking photos from the public street of 'Wagner' family owned properties." (*Id.* at 50.) Plaintiff alleges that he was ordered to surrender to the Bristol Township Police Department and Defendant Jason Mancuso, another police officer, told him that he would be home "in a couple of hours." (*Id.* at 73.) He alleges that he complied with this request and "surrendered" on February 3, 2022. (*Id.*; *see also id.* at 58, 72.)

After surrendering, Plaintiff alleges that he was taken to the Bucks County Correctional

---

[6] It appears that Plaintiff was eventually convicted of this charge. *See Commonwealth v. Jones*, CP-09-SA-0000444-2022 (Ct. Com. Pl. Bucks Cnty. 2022). The Court may take judicial notice of Plaintiff's publicly available criminal docket when reviewing a motion to dismiss. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (providing that courts can consider "matters of public record" in reviewing a motion to dismiss).

Facility ("BCCF")[7] where he was incarcerated for 76 days and spent six days in solitary confinement.  (*Id.* at 20.)  On March 22, 2022, Plaintiff states that he was charged with making "terroristic threats."  (*Id.* at 4, 7.)  Plaintiff claims that his bail was initially posted at $1,000,000 before being lowered to $100,000, which he posted "at great expense and inconvenience."  (*Id.* at 4.)

Plaintiff alleges that while he was incarcerated, he was denied "medically necessary medications" for six days, and that he suffered a shoulder injury but did not receive an MRI that he was allegedly promised.  (*Id.* at 44.)  He also asserts that his glasses were stolen at the time of his intake and that he was threatened by a nurse identified only as "Beth."  (*Id.* at 42−45.)  Plaintiff describes how he did not see his service dog Holly again once he entered the BCCF because for the first six days he was prohibited from making a phone call to coordinate care for Holly.  (*Id.* at 59.)  It was not until Plaintiff's release from the facility on April 20, 2022, that he learned that Holly had died.  (*Id.* at 4, 34.)

Plaintiff brings this case based on his assertion that the named Defendants "killed [his dog] Holly and ruined [his] life with a conspiracy designed to do [him] significant harm and thus far have succeeded."  (*Id.* at 5.)  Plaintiff asserts that the alleged conspiracy against him is the "same" as a similar conspiracy that was perpetrated against his late father in 2002.  (*Id.* at 3.)  Plaintiff asserts that the conspiracy was conducted "to injure the Plaintiff in order to save Jeffrey Wagner's police career . . . [and] due to [Jeffery (sic) Wagner's] family's unbridled, inappropriate and undue influence in Bristol TWP."  (*Id*. at 16.)

Plaintiff brings his TAC against 39 Defendants, asserting a myriad of constitutional and state law claims, which the Court discusses in further detail below.  Plaintiff describes his action

---

[7] Plaintiff refers to this entity as the "Bucks County Prison" throughout his TAC.  (*See generally* Doc. No. 60.)

as a "civil rights action seeking injunctive and declaratory relief and punitive damages for substantial violations of Plaintiff's protected rights by Defendants." (*Id*. at 3.)

## II.    PROCEDURAL HISTORY

In December 2023, Plaintiff filed his first Complaint and a subsequent Amended Complaint. (Doc. Nos. 1, 5.) In his 65-page Amended Complaint, he made repetitive, largely incoherent, and disjointed allegations that similarly failed to present a clear narrative of the events at issue. (*See generally* Doc. No. 5.) His Amended Complaint also jumped back and forth chronologically, which made it difficult for the Court to ascertain to which arrest and set of charges many of the events in his Amended Complaint were connected. (*See generally id.*) Nor did his Amended Complaint identify which claims he brought against each Defendant, what each Defendant had allegedly done, and when they allegedly engaged in the wrongful action. (*See generally id.*)

Given these issues, the Court found that the Amended Complaint failed to satisfy Federal Rule of Civil Procedure 8. (Doc. No. 51.) Even under the liberal construction afforded to pro se litigants, the Court ruled the Amended Complaint failed "to provide fair notice of the grounds upon which [Plaintiff's] claims against each Defendant rest, as required by Rule 8." (*Id.* (quoting *Hall v. SEPTA*, No. 24-cv-1374, 2024 WL 1773369, at *3 (E.D. Pa. Apr. 24, 2024)).) So, the Court dismissed his Amended Complaint without prejudice on January 13, 2025, but granted Plaintiff leave to amend his complaint *except* for his claims against "Every Single, All 15 Bucks County Judges, Including District Justices, Robert Wagner, and Kevin Wagner Sr."[8] (*Id.* at 1, 3.)

---

[8] The dismissal of these claims was with prejudice because Plaintiff's claims against the Bucks County Judges were premised on their decisions regarding recusal, the issuance of fines against Plaintiff for property violations, and Plaintiff's bail amount. (*See* Doc. No. 51 at 3 n.1.) These are judicial acts taken within the Bucks County Judges' jurisdiction, and so Plaintiff's claims were barred by judicial immunity. Thus, any amendment would have been futile. *See Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) ("A judicial officer in the performance of his duties has absolute immunity from suit and will

The Court gave Plaintiff 60 days to file a Second Amended Complaint and encouraged him to use the template found on the Court's website. (*Id.* at 3–4.)

On March 7, 2025, Plaintiff filed 153 pages of documents on the docket, but he did not file a Second Amended Complaint. (Doc. No. 52.) In those documents, he included a motion for a continuance, motion for inclusion, and motion to proceed. (*Id.* at 1, 62–63.) The Court denied those three motions and ordered Plaintiff to file a Second Amended Complaint by April 4, 2025. (Doc. No. 53.)

On April 7, 2025, Plaintiff filed a Second Amended Complaint. (Doc. No. 54.) In his 172-page Second Amended Complaint, Plaintiff listed 57 Defendants, attempted to incorporate allegations from his First Amended Complaint, and brought thirteen claims, again without specifying against whom each claim was brought.[9] (*Id.*) The Court dismissed this Second Amended Complaint without prejudice under Federal Rule of Civil Procedure 8. (*See* Doc. No. 56.) In the Order, the Court explained that Plaintiff could not incorporate all the allegations from his First Amended Complaint, that he needed to state his claims in numbered paragraphs, and that he "must specifically allege which Defendants engaged in what wrongful conduct" that forms the basis of each claim. *Falat v. County of Hunterdon*, No. 12-cv-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013). Though the Court dismissed Plaintiff's Second Amended Complaint under Federal Rule of Civil Procedure 8, given Plaintiff's pro se status, the

---

not be liable for his judicial acts.").

[9] Though Plaintiff's Second Amended Complaint listed 57 Defendants, the list of Defendants was not sequential, jumped from Defendant 25 to Defendant 19, and identified the same individuals as Defendants in multiple different places. (*See* Doc. No. 54 at 2–12.) The Second Amended Complaint also contained several duplicate pages. (*See id.* at 13–29.)

Court *again* allowed Plaintiff the opportunity to amend, directing him to file a TAC by May 2, 2025. (Doc. No. 56 at 5.)

From May 2 to May 5, 2025, Plaintiff filed four different complaints. (*See* Doc. Nos. 57–60.) Based on the Court's review of these filings, it appears that Plaintiff intended for Doc. No. 60 to serve as his TAC. (*See* Doc. No. 60 at 1 (asking the Court to allow this complaint to "supersede all others previously submitted".) On May 16, 2025, the Court accepted Doc. No. 60 as the operative Complaint in this case and named it the TAC. (Doc. No. 63 at 3.) Plaintiff's now 103-page TAC is organized by "Counts" where he describes allegations and claims against each Defendant with varying levels of detail and cohesion.[10] The Court provides an overview below of the Defendants who Plaintiff has dropped from his TAC, previous Defendants who have not been properly served, newly added Defendants who have also not been properly served, and the Defendants who have filed motions to dismiss.

### A.    Dropped Defendants

In the TAC, Plaintiff drops his claims against several Defendants, including Does 1–100 inclusive, Gabriel Escobar, Elizabeth Hughes, and "Philadelphia Enquirer [sic]." (*See generally* Doc. No. 60.) "Because an amended complaint supersedes the original, parties voluntarily dropped from an amended complaint do not remain in the case." *Mullin v. Balicki*, 875 F.3d 140, 156 (3d Cir. 2017). On May 16, 2025, the Court dismissed Plaintiff's claims against these Defendants. (Doc. No. 63.) The Court also dismissed *with prejudice* Plaintiff's claims against Robert Wagner and Kevin Wagner, Sr., because the Court previously dismissed the claims against these defendants with prejudice. (*Id.*)

---

[10] As Plaintiff is pro se, the Court has liberally constructed his claims and done its best to capture the individual claims brought against each Defendant in light of Plaintiff's lengthy and difficult-to-follow format.

### B.    Previous Defendants Not Properly Served

Plaintiff's TAC brings claims against several Defendants, including Pennsylvania Governor Josh Shapiro,[11] the Commonwealth of Pennsylvania, Bucks County, BCCF, Bucks County Sheriff's Office, Bucks County Constables, Falls Township, District Attorney Matthew Weintraub, and Alexis Wagner, all of whom Plaintiff named in his prior Complaints.  (Doc. No. 60 at 2.)  Three times, the Court directed Plaintiff to serve these Defendants and warned him that failure to do so would result in the dismissal of his claims against these Defendants under Federal Rule Civil Procedure 4(m).  (*See* Doc. No. 37 at 2; Doc. No. 42 at 2; Doc. No. 48 at 2.) On May 16, 2025, the Court dismissed Plaintiff's claims against these Defendants pursuant to Federal Rule of Civil Procedure 4(m).  (Doc. No. 63.)

### C.    New Defendants Not Properly Served

Plaintiff's TAC identifies multiple new Defendants, including Brian Fitzpatrick, Troy Bodolus, Wallace H. Bateman Jr., Jeffrey L. Finely, Neshaminy School District, FBI, Kevin Burns, and Brian Galloway.  (*Id.*)  Plaintiff was directed to serve process on these new Defendants by August 4, 2025, and to file the proof of service by August 11, 2025, as required by Federal Rule of Civil Procedure 4(m).  (*Id.* at 13.)  On August 3, Plaintiff filed a proof of service (Doc. No. 78) and requested time to correct any service-related issues.  (*Id.* at 1.)  On September 10, 2025, the Court issued an Order which described Plaintiff's service-related issues and provided detailed instructions on how Plaintiff could correct his service mistakes in a timely manner.  (Doc. No. 90.)  The Court warned Plaintiff that failure to serve the new Defendants would result in the dismissal of his claims against these Defendants pursuant to Federal Rule of Civil Procedure 4(m).  (*Id.* at 10.)  But, as of today, March 31, 2026, Plaintiff has not filed proper

---

[11] Plaintiff incorrectly spelled Governor Shapiro's name as "Josh Shipiro" in the caption of his TAC.  (*See* Doc. No 60 at 1.)

proof of service for Defendants Brian Fitzpatrick, Troy Bodolus, Wallace H. Bateman Jr., Jeffrey L. Finely, Neshaminy School District, the FBI, Kevin Burns, and Brian Galloway.  As further outlined in the Service section above, the Court finds that dismissal of these unserved Defendants is warranted pursuant to Federal Rule of Civil Procedure 4(m).

### D.    Moving Defendants

That leaves the Moving Defendants, some of whom challenge service and some of whom do not.  The Moving Defendants have all filed motions to dismiss on various dates noted below:

| Defendant(s) | Motion to Dismiss Docket Number | Date Filed | Plaintiff's Response Docket Number | Date Filed |
|---|---|---|---|---|
| PrimeCare Medical Inc. | Doc. No. 66 | May 20, 2025 | Doc. No. 93 | Sept. 12, 2025 |
| Bristol Township | Doc. No. 68 | May 27, 2025 | Doc. No. 93 | Sept. 12, 2025 |
| Middletown Township and Jeffrey Wagner | Doc. No. 69 | May 29, 2025 | Doc. No. 93 | Sept. 12, 2025 |
| Maryanne Wagner | Doc. No. 70 | May 30, 2025 | Doc. No. 93 | Sept. 12, 2025 |
| Jason Mancuso, Ashley McCabe, Emily Maialetti, Robert Coulton, Sean Cosgrove, Randee Elton | Doc. No. 82 | Aug. 7, 2025 | Doc. No. 93 | Sept. 12, 2025 |

| Middletown Township, Joseph Bartorilla, Michael Lubold, Jeffrey Wagner, Megan Freer, John Beck, Edward DiFrank[12] | Doc. No. 84 | Aug. 11, 2025 | Doc. No. 93 | Sept. 12, 2025 |
|---|---|---|---|---|
| Tina Davis | Doc. No. 86 | Aug. 11, 2025 | Doc. No. 93 | Sept. 12, 2025 |
| Neshaminy School District, Troy Bodolus | Doc. No. 94[13], Doc. No. 104 | Sept. 12, 2025 Oct. 20, 2025 | Doc. No. 109 | Nov. 10, 2025 |
| Pennsylvania Attorney General | Doc. No. 99 | Oct. 2, 2025 | Doc. No. 118 | Jan. 15, 2026 |

By way of these motions, Moving Defendants seek dismissal of Plaintiff's TAC in its entirety. As each motion is fully briefed, they are ripe for resolution. But briefly, the Court turns to the service of process issues before moving into a discussion of the motions to dismiss.

## III.    SERVICE OF PROCESS

Federal Rule of Civil Procedure 4(m) provides that if "a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant or order that service be made within a specified time. Fed. R. Civ. P. 4(m). In the Court's September 10, 2025, Order, the Court ordered Plaintiff to perfect service on Defendants Brian Fitzpatrick, Troy Bodolus, Wallace H. Bateman Jr., Jeffrey L. Finely[14], Neshaminy School District, and the FBI by October

---

[12] The Middletown Defendants also filed a reply on September 18, 2025. (Doc. No. 95.)

[13] Neshaminy School District and Troy Bodolus filed a subsequent motion to dismiss due to their initial filing being made before Defendants' saw the Court's September 10, 2025 Order, which provided Plaintiff with an extension to serve these Defendants. (Doc. No. 104.) Their motion to dismiss moves to dismiss Plaintiff's claims against them for improper service of process.

[14] On March 24, 2026, Plaintiff filed a "Notice of Sheriff Fee Discrepancy and Resulting Service

6, 2025 and to file proof of proper service by October 13, 2025.  (Doc. No. 90 at 9–10.)  The Court also ordered Plaintiff to perfect service on Defendants Kevin Burns and Brian Galloway by December 12, 2025, and to file proof of service no later than December 19, 2025.  (Doc. No. 90 at 6.)  In both Orders, the Court warned that failure to do so would result in the dismissal of his claims against all of these Defendants pursuant to Federal Rule of Civil Procedure 4(m).  (*Id.* at 10 n.9.)

But, as of today, March 31, 2026, Plaintiff has not filed proper proof of service for Defendants Brian Fitzpatrick, Troy Bodolus[15], Wallace H. Bateman Jr., Jeffrey L. Finely, Neshaminy School District[16], the FBI[17], Kevin Burns, and Brian Galloway.  Thus, the Court

---

Delay".  (Doc. No. 123.)  In this Notice, Plaintiff alleges that he attempted to serve Wallace Batemen Jr., Brian Fitzpatrick, and Jeffrey Finely on September 11, 2025, but that a "material discrepancy in the application of civil service fees by the Bucks County Sherrif's [sic] Office" that he received on March 12, 2026, rendered his service improper and has impacted his ability to make timely service.  (*Id.* at 1.)  However, it has been six months since Plaintiff attempted to serve these Defendants and Plaintiff never filed proof of service by the Court's October 13, 2026, Deadline. (Doc. No. 90.)

[15] On November 11, 2025, Plaintiff filed a letter in response to Troy Bodolus and Neshaminy School District's motion to dismiss for lack of proper service (Doc. No. 109), arguing that he properly served these Defendants using the Bucks County Sheriff's Department and that the Court is in possession of the Sheriff's Return of Service.  Contrary to Plaintiff's assertion, the Court has not received any proof of service since the Court's September 10, 2025 Order (Doc. No. 90) showing that service was properly effectuated as to these Defendants.  However, even if Plaintiff had properly served these Defendants, the Court would still find that Plaintiff's claims against these Defendants fail for the reasons discussed in Section IV.

[16] *See supra* n. 14.

[17] On September 27, 2025, Plaintiff filed "Return of Service" documentation in an attempt to show that the FBI was properly served on September 23, 2025.  (Doc. No. 97.)  However, Plaintiff's service attempt on the FBI was improper despite the Court's detailed instructions on how to properly serve the FBI in its September 10, 2025, Order.  (Doc. No. 90 at 2.)  As the Court previously stated, "[t]o serve a United States agency," like the FBI, "a party must serve the United States and also send a copy of

finds that dismissal of these unserved Defendants is warranted pursuant to Federal Rule of Civil Procedure 4(m).

The service issues in this case have been well-documented. The Court has gone above and beyond to give Plaintiff every possible chance to perfect service on the Defendants in this case. (*See* Doc. No. 37 at 2; Doc. No. 42 at 2; Doc. No. 48 at 2; Doc. No. 90 at 10.) In fact, on two occasions, the Court has given Plaintiff detailed explanations as to why his prior service efforts were insufficient and called his attention to the rules that governed service. (*See* Doc. No. 48 at 2; Doc. No. 90 at 1–10.) In both May 2025 and September 2025, the Court explained why Plaintiff had failed to properly serve specific Defendants in this case and stressed that he must make proper service on the newly named Defendants. (Doc. No. 63.) Though Plaintiff is proceeding pro se, "his failure to follow Rule 4's service requirement due to a failure to read or

---

the summons and of the complaint by registered or certified mail to the agency[.]" Fed. R. Civ. P. 4(i)(2). To serve the United States, a party must:

(A)    (i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or

(ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;

(B)    send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

(C)    if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

Fed. R. Civ. P. 4(i)(1). Here, while Plaintiff may have served his complaint to an employee of the FBI (*see* Doc. No. 97 at 2), he did not *also* deliver a copy of the summons and the complaint to the United States' Attorney in Philadelphia and send a copy to the Attorney General of the United States, as required by Federal Rule of Civil Procedure 4(i)(2).

13

understand Rule 4" does not "provide good cause for lack of proper service." *Dougherty v. Dupes*, No. 17-cv-01541, 2018 WL 1696651, at *13 (M.D. Pa. Apr. 6, 2018).  In the Court's September 2025 Order, the Court warned Plaintiff that this was his "last opportunity to make service on the Defendants identified in this Order."  (Doc. No. 90 at 10 n.9.)  But, as Plaintiff's service-related issues remain uncorrected, the Court dismisses these Defendants from the instant action.

## IV.    MOTIONS TO DISMISS

The Court turns now to the Moving Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A.    Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory*, 114 F.3d at 1426. "However an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (quotation marks and alterations omitted).  Similarly, the Court "may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

**B.     Discussion**

Plaintiff brings this suit against Moving Defendants pursuant to various state and federal statutes, and invoking several Amendments to the United States Constitution. Moving Defendants move to dismiss Plaintiff's claims against them in their entirety. First, the Court addresses Plaintiff's individual capacity and *Monell* claims under 42 U.S.C. § 1983. Next, the Court evaluates whether Plaintiff has stated a claim for conspiracy, pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. Then, the Court evaluates Plaintiff's state law claims.[18] Finally, the Court addresses Plaintiff's claims under 42 U.S.C. § 1988.

**1.     Section 1983 Claims**

Plaintiff brings claims under 42 U.S.C. § 1983 against Defendants Bristol Township, Middletown Township, PrimeCare Medical, Jason Mancuso, Michael Lubold, and Ashley McCabe. (*See* Doc. No. 60 at 15–17, 17–30, 42–46, 57–61, 61–64.) He alleges that these Defendants violated his First, Fourth, Fifth, Sixth, Eighth, Ninth[19], Thirteenth, and Fourteenth Amendment rights. But before considering whether Plaintiff has stated a claim against these parties, the Court must determine whether Plaintiff has satisfied the threshold pleading requirements for a civil rights action. Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…, subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law….

---

[18] Plaintiff asserts "the common law causes of actions of abuse of process, malicious prosecution, false arrest, invasion of privacy, trespass, intentional infliction of emotional distress, mental anguish and pain and suffering, slander and libel, and conspiracy to effectuate all the same" against all Defendants. (*See generally* Doc. No. 60.)

[19] There is no private right of action under the Ninth Amendment. As such, Plaintiff cannot sustain a Ninth Amendment claim against any Defendant in this action.

42 U.S.C. § 1983. "[T]o state a claim under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law." *Jenkins v. Cordova*, No. 22-cv-6482, 2023 WL 3453635 at *4 (D.N.J. May 15, 2023) (citing *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011)).

Public officials can be sued in either their individual or their official capacities, but individual capacity suits "seek to impose personal liability upon a government official for actions he [or she] takes under color of state law." *Kentucky v. Graham,* 473 U.S. 159, 165 (1985); *Melo v. Hafer*, 912 F.2d 628, 637 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991) ("individual capacity suits may be brought against government officials who acted under color of state law"). "In such a case, the plaintiff need only show that the official, acting under color of state law, caused the deprivation of a federal right." *Judge v. Shikellamy Sch. Dist.*, 135 F. Supp. 3d 284, 300 (M.D. Pa. 2015), *aff'd*, 905 F.3d 122 (3d Cir. 2018). "When a plaintiff brings a § 1983 claim against a defendant in his or her individual capacity, the plaintiff must establish that the defendant had personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Byars v. Sch. Dist. of Phila.*, 942 F. Supp. 2d 552, 569 (E.D. Pa. 2013) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (internal citation omitted)). Personal involvement can be demonstrated through "allegations of personal direction or of actual knowledge and acquiescence." *Id.*

Local governments and municipalities are also considered persons under § 1983 and may be sued directly under that section when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690

(1978).  "[A] government entity may not be held vicariously liable under § 1983 for the acts of its employees under a respondeat superior theory of liability."  *Winn & Sons, Inc.*, 162 F. Supp. 3d at 459 (citing *Monell*, 436 U.S. at 691).  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Monell*, 436 U.S. at 694; *see also Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) ("When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." (quotation marks omitted)); *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue.").

Courts have recognized two avenues to municipal liability under *Monell*.  "A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice."  *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citations omitted); *Benson v. Delaware County*, No. 21-cv-2854, 2022 WL 784475, at *3 (E.D. Pa. Mar. 15, 2022).

With this background in mind, the Court turns to whether Plaintiff has stated any claim upon which relief can be granted against Defendants Jason Mancuso, Michael Lubold, Ashley McCabe, Bristol Township, Middletown Township, and PrimeCare Medical under § 1983.  For the reasons explained below, the Court finds he does not.

17

### a.    *Claims Against Jason Mancuso*

Plaintiff has identified Defendant Jason Mancuso in Count Thirteen of his TAC.  (Doc. No. 60 at 57−61.)  He alleges that on or about February 3, 2022, Officer Mancuso, whom he asserts "has close ties and [is] interpersonal with the Wagner family," contacted Plaintiff by telephone to inform him that an arrest warrant had been issued for Plaintiff.  (*Id.* at 58.)  During that phone call, Officer Mancuso reportedly told Plaintiff he needed to come to the police station that day despite Plaintiff asking to voluntarily surrender the following day.  (*Id.* at 57−59.)  Plaintiff also asserts that Officer Mancuso conducted a "sham" investigation as to the stalking and harassment charges filed against Plaintiff because Officer Mancuso "had a duty to properly investigate [the arrest against him] and did not."  (*Id.* at 59.)  Specifically, Plaintiff takes issue with the fact that the investigation purportedly only lasted three days and claims his accusers were "[i]mproper witnesses" because they were members of the Wagner family.  (*Id.*)

Defendant Mancuso moves to dismiss Plaintiff's § 1983 claims on the grounds that Plaintiff has not identified a viable constitutional violation against him.  (Doc. No. 82.)  More specifically, he argues that his arrest of Plaintiff did not violate the Fourth Amendment because Plaintiff has not pleaded any facts that demonstrate Defendant Mancuso lacked probable cause to charge him with stalking and harassment.  (*See* Doc. No. 82-2 at 12, 14.)  He further argues that Plaintiff admits that Officer Mancuso spoke to the purported victims of Plaintiff's harassment, which is a sufficient basis for a police officer to form probable cause.  (*Id; see also* Doc. No. 60 at 58.)  In Plaintiff's response, he asserts only that Defendant Mancuso's probable cause report "clearly states that Kevin Wagner Sr. (District Justice and father of Officer Jeffrey Wagner), 1 of 4, false arrested my service dog Holly and I 11-Dec-21."  (Doc. No. 93 at 13.)

To maintain a false arrest claim under § 1983 pursuant to the Fourth Amendment,

18

Plaintiff must show that he was arrested and the arresting officer "lacked probable cause to make the arrest." *Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001). Under the Fourth Amendment, probable cause to arrest or prosecute exists if the facts and circumstances which are within the knowledge of the police at the time of the arrest, and of which the police have reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that a suspect has committed a crime. *See, e.g.*, *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The Third Circuit has held that information from a single and credible witness is sufficient to allow a police officer to form probable cause. *See, e.g., Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 (3d Cir. 2000). Once a police officer has sufficient evidence within his knowledge to establish probable cause, he is not required to conduct any further investigation. *See, e.g.*, *Merkle*, 211 F.3d at 790 n.8 (stating that a police officer need not undertake "an exhaustive investigation in order to validate the probable cause that, in his mind, already exists"); *Snell*, 2004 WL 62711 at *6 ("Contrary to plaintiff's argument, the law does not require the police to conduct a 'thorough' investigation, leaving no stone unturned. Such a heightened burden would convert a preliminary investigation into a full-fledged inquisition. Rather, the law commands that 'once a law enforcement officer has sufficient evidence to establish probable cause, no further investigation is required.'"). And, "there is no requirement that the police speak to [a criminal suspect] to get his 'side of the story' before arresting him." *See, e.g.*, *Benckini v. Coopersburg Borough*, No. 03-cv-3671, 2004 WL 1686954 at *4 (E.D. Pa. July 27, 2004).

Based upon this legal standard, the Court agrees with Defendant Mancuso that Plaintiff has not pleaded any facts that demonstrate that Defendant Mancuso lacked probable cause to charge Plaintiff with stalking and harassment. (Doc. No. 82-2 at 14.) In this specific circumstance, Defendant Mancuso was not required to conduct a more thorough investigation,

19

and Plaintiff's claims that his arrest was not "justified, legal, lawful, and merited" are merely conclusory allegations.  (Doc. No. 60 at 60.)  Thus, Plaintiff has failed to plead sufficient facts against Officer Mancuso to support a Fourth Amendment violation.  As such, Plaintiff's claims against Defendant Mancuso under § 1983 must be dismissed.[20]

### b.      Claims Against Michael Lubold

Plaintiff has identified Defendant Michael Lubold in Count Fourteen of his TAC (Doc. No. 60 at 61−64.)  Plaintiff asserts that Defendant Lubold "supervised" Plaintiff's December 11, 2021, arrest for trespassing on public school property.  (*Id.* at 62.)  Defendant Lubold argues Plaintiff's claim must be dismissed as Plaintiff fails to allege any underlying constitutional violation that would render Lubold liable pursuant to §1983.  (Doc. No. 84 at 11.)  Specifically, Lubold asserts that Plaintiff fails to allege a viable false arrest claim because the December 11, 2021 arrest of Plaintiff was based on probable cause—namely, that Plaintiff was on notice that he was not allowed on school property.  (*See* Doc. No. 60 at 62 ("No one is permitted on school property except for school business during school hours.").)  Plaintiff's response does not further address his allegations against Defendant Lubold.  (*See* Doc. No. 93.)

The Court agrees with Defendant Lubold that Plaintiff has not pleaded any facts that suggest Plaintiff's arrest was not based on probable cause.  It is undisputed that Plaintiff received a letter from the school district informing him that he was not permitted on school property and subsequently he was arrested while on school property for trespassing.  (*Id.* at 62; *see also* Doc. No. 84-1 at 12.)  As detailed above, for probable cause to exist, the facts and circumstances must be "sufficient to justify a prudent officer in believing that the suspect had

---

[20] Plaintiff has not pleaded any additional facts that give rise to a possible constitutional violation under the First, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments so the Court does not address these claims.

committed a crime." *Id.* (*See Jones v. Middletown Township*, 253 F. App'x 184, 188 (3d Cir. 2007)). Here, Defendant Lubold reasonably believed that Plaintiff was trespassing, which is sufficient to establish probable cause. *Id.* (*See United States v. Glasser*, 750 F.2d 1197, 1205 (3d Cir. 1984) (a court will look at the "totality of the circumstances" to determine whether there is probable cause). The Court will dismiss Plaintiff's § 1983 claims against Defendant Lubold.[21]

### c.    *Claims Against Ashley McCabe*

Plaintiff has identified Defendant Ashley McCabe in Count Seventeen of his TAC. (Doc. No. 60 at 67−69.) Plaintiff asserts that on February 29, 2022, Officer McCabe came to "Plaintiff's residence after Plaintiff called 911 after being assaulted by Wagner family members Bucks County Deputy Constable Andrew Koehonen." (Doc. No. 60 at 68 ¶ 3.) Plaintiff does not provide any further details or allegations related to this encounter, and thus, cannot demonstrate that Defendant McCabe had "personal involvement in the alleged wrongs" necessary to sustain a § 1983 claim. *Byars*, 942 F. Supp. 2d at 569. As such, Plaintiff's § 1983 claims against Defendant McCabe must be dismissed.

### d.    *Claims Against Bristol Township*

Plaintiff has identified Defendant Bristol Township in Count Four of his TAC. (Doc. No. 60 at 15−17.) The crux of Plaintiff's claim against Bristol Township is that Officer Jeffrey Wagner's family "dictates" the Bristol Township Police Department's actions and "the treatment of Plaintiff." (*Id.* at 16.) Plaintiff asserts that there was "an official policy of acquiescence by the township." (*Id.* at 15 ¶ 2.) Plaintiff also claims that Bristol Township participated in a

---

[21] Again, Plaintiff has not pleaded any additional facts that give rise to a possible constitutional violation under the First, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments.

conspiracy[22] against Plaintiff to "save" Jeffrey Wagner's police career which violated his First, Second, Fourth, Fifth, Sixth, Eighth, Tenth, and Fourteenth Amendment rights, and thus he brings those claims pursuant to § 1983.  (*Id.* at ¶ 5.)

For Plaintiff's § 1983 claims to succeed, he must assert either a policy or custom that the Township failed to follow or a failure to train on the part of the Township.  *Parry*, 930 F.3d at 105 (3d Cir. 2019).  Defendant argues that Plaintiff's complaint "fails to adequately [] identify an official policy, practice, or custom that Bristol was allegedly the 'moving force behind' or show that Bristol acted with 'deliberate indifference to the rights'" of Plaintiff.  (Doc. No. 68 at 11) (internal citations omitted.)  Plaintiff's response does not identify a policy, practice, or custom, or provide further analysis describing how Bristol Township acted with deliberate indifference towards Plaintiff.  (Doc. No. 93 at 21.)  Instead, Plaintiff restates his arguments that there was no probable cause to arrest him on December 21, 2022.  (*Id.*)

Here, the Court finds that Plaintiff's *Monell* claim against Middletown Township, based on "an official policy of acquiescence by the township" is too vague to survive a motion to dismiss.  (*Id.* at 15.)  Plaintiff fails to "identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered."  *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984); *Brown*, 50 U.S. at 407–08 (explaining that the policy or custom must be the "moving force" behind the plaintiff's alleged injury).  And "acquiescence" is not a concrete policy made by "a municipal decision-maker with final authority [to issue] an official proclamation."  *Kean v. Henry*, 523 Fed. App'x 879, 881 (3d Cir. 2013) (citing *Kelly v. Borough of Carlisle*, 622 F.3d 248, 263 (3d Cir. 2010)).  As such, Plaintiff's *Monell* claim cannot proceed and must be dismissed.  *Thomas v. Cumberland County*,

---

[22] The Court addresses Plaintiff's conspiracy claims in Section IV.B.2.

749 F.3d 217, 222 (3d Cir. 2014) (quotation marks omitted).

### e.     Claims Against Middletown Township

In Count Five, Plaintiff similarly claims that Middleton Township violated his First, Second, Fourth, Fifth, Sixth, Eighth, Tenth, and Fourteenth Amendment rights, and brings claims pursuant to § 1983. (*Id.* at 17−30.) Plaintiff alleges that Township officials "were well aware of the harassment by numerous police officers towards the Plaintiff." (*Id.* at 17.) For thirteen pages, Plaintiff describes numerous encounters with Police Officers related to a 2002 arrest, and then his 2021 and 2022 arrests. (*See id.* at 17–30.) He also makes the same blanket assertion that he brings against Bristol Township—that the Township had a "policy of acquiescence." (*Id.* at 17.)

Middletown Township Defendants argue that Plaintiff fails to satisfy either prong of *Monell* liability. (Doc. No. 69-1 at 19.) The Court agrees. Like Plaintiff's claim against Bristol Township, Plaintiff's *Monell* claim against Middletown Township, premised on his assertion that there was "an official policy of acquiescence by the township," is too vague to survive a motion to dismiss. (*Id.* at 15.) Plaintiff's § 1983 claim against Middletown Township is dismissed.

### f.     Claims Against PrimeCare Medical

In Count Eight, Plaintiff brings claims against PrimeCare Medical pursuant to § 1983 for alleged violations of his First, Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendment rights. (Doc. No. 60 at 42−46.) Since PrimeCare Medical is a private corporation providing medical services to the BCCF, its liability is also analyzed under the *Monell* standard. *See Henry v. Bushrik*, No. 08-cv-1348, 2011 WL 767540 (E.D. Pa. Feb. 24, 2011) (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583−84 (3d Cir. 2003) ("A private corporation contracted by a prison to provide health care for inmates cannot be held liable on a

23

respondeat superior theory; rather, it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.").

Defendant argues that Plaintiff cannot demonstrate a *Monell* cause of action against Primecare Medical because he has made no allegations about PrimeCare Medical's policies and procedures relative to his provision of medical care at the BCCF. (Doc. No. 66-1 at 12.) Plaintiff's opposition does not address his allegations against PrimeCare Medical. (*See generally* Doc. No. 93.) And, the Court's own review of Plaintiff's claims—which are predicated on inadequate medical care and "[d]eliberate indifference" to his needs while he was a pretrial detainee—finds they do not arise from an alleged policy, regulation, or decision by PrimeCare Medical leadership.[23] *Mulholland*, 706 F.3d at 237 ("When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom.") (quotation marks omitted)). As such, Plaintiff's § 1983 claims against PrimeCare Medical must be dismissed.

### 2.    Conspiracy Claims

Next, the Court turns to Plaintiff's conspiracy claims. Principally, Plaintiff alleges that "[the Defendants] killed [his dog] Holly and ruined [his] life with a conspiracy designed to do [him] significant harm." (Doc. No. 60 at 5.) Moreover, he claims that his "dog is dead simply to shut me up and cease my whistle blowing activities against law enforcement and judicial personnel." (*Id*. at 10.) He specifically calls out Defendant Jeffrey Wagner, who he alleges was "an active participant in the conspiracy with named defendants to discredit, add charges, and

---

[23] A pretrial detainee's Fourteenth Amendment claims of inadequate medical care are evaluated under the same standard as a convicted prisoner's claims under the Eighth Amendment. *See Thomas v. Cumberland County*, 749 F.3d 217, 223 n.4 (3d Cir. 2014).

24

incarcerate the Plaintiff for the sole purpose of saving his police career." (*Id.* at 27; *see also id.* at 16 (Plaintiff asserts that the conspiracy was conducted "to injure the Plaintiff in order to save Jeffrey Wagner's police career . . . due to his family's unbridled, inappropriate and undue influence in Bristol TWP").)  In addition, Plaintiff asserts that the alleged conspiracy against him is the "same" as a similar conspiracy that was perpetrated against his late father in 2002.  (*Id.* at 3.)

Liberally construing Plaintiff's allegations[24], he appears to assert claims for conspiracy under §§ 1983, 1985[25], and 1986.  The Court begins with an overview of each of the legal standards before analyzing Plaintiff's claims.

First, to state a claim for civil conspiracy under § 1983, "a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Gale v. Storti*, 608 F. Supp. 2d 629, 635 (E.D. Pa. 2009).  To prove the existence of a conspiracy, the plaintiff must plead that there was "an agreement, understanding, or 'meeting of the minds' to violate the plaintiff's rights." *Id.* (quoting *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008)); *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 645 (E.D. Pa. 2014), *aff'd*, 572 F. App'x 68 (3d Cir. 2014) ("A conspiracy is not parallel conduct by different parties; it must embody, at its heart, 'an agreement between the defendants and state officials[.]'").  At the motion to dismiss stage, a plaintiff "must assert

---

[24] Plaintiff only asserts his § 1985 and 1986 claims against Defendants PrimeCare Medical, Middletown Township, Jason Mancuso, Michael Lubold, and Ashley McCabe explicitly.  However, as the Court must liberally construe Plaintiff's allegations, the Court analyzes these claims as to all Moving Defendants.

[25] Plaintiff's TAC does not identify which particular provision of § 1985 upon which Plaintiff bases his claim.  However, it appears that Plaintiff intends to assert a claim pursuant to § 1985(3). § 1985(3) provides a private cause of action for damages incurred "[i]f two or more persons . . . conspire . . . for the purpose of depriving . . . any person of the equal protection of the laws."  42 U.S.C. § 1985(3).

facts from which a conspiratorial agreement can be inferred." *Mikhail*, 991 F. Supp. 2d at 645 ("And the law is clear that the plaintiff must plead more than legal conclusions of a conspiracy or agreement."). A civil rights conspiracy under § 1983 also requires "a predicate federal violation" to "anchor" the claim. *Dondero v. Lower Milford Township*, 431 F. Supp. 3d 590, 606 (E.D. Pa. 2019), *aff'd*, 5 F.4th 355 (3d Cir. 2021).

Second, "[s]ection 1985 of the federal civil rights provisions prohibits conspiracies to deprive a U.S. citizen of his constitutional rights based on invidious class-based discrimination." *Dixon v. Boscov's, Inc.*, No. 02-cv-1222, 2002 WL 1740583 at *2 (E.D. Pa. July 17, 2002). "In order to state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102–03 (1971)).

Third, "[s]ection 1986 provides a cause of action against persons who are aware of a section 1985 conspiracy, but fail to intervene." *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014). To properly state a claim under § 1986, a plaintiff must allege that: "(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994). "[T]he success of a section 1986 claim is contingent upon the existence of a viable section 1985 claim." *Murphy v. Yates,* No. 05-cv-2552, 2005 WL 2989630, at *2 n.2 (E.D. Pa. Aug. 8, 2005) (quoting *Moyer v.*

*Borough of North Wales,* No. 00-cv-1092, 2000 WL 875704, at \*4 (E.D. Pa. June 22, 2000)).

With these standards in mind, the Court finds that Plaintiff has not pleaded any of his conspiracy claims with sufficient specificity to survive a motion to dismiss. "Labels and conclusions" are not enough to establish a conspiracy claim. *Twombly*, 555 U.S. at 556. Most fatal, Plaintiff does not provide facts sufficient to establish that there was an "agreement" between the Defendants to "carry out the alleged chain of events" including his arrests and the death of his dog, Holly. *Spencer v. Steinman,* 968 F. Supp. 1011, 1020 (E.D. Pa. 1997). "A lack of agreement is fatal to [] conspiracy claims under section 1983 and section 1985, which, in turn, prevents Plaintiff from establishing a claim under section 1986." *Rosembert v,* 14 F. Supp. 3d at 648. "It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Id.* And, Plaintiff has also not established a "deprivation of a constitutional or federal statutory right or privilege" which is necessary to sustain a § 1983 conspiracy claim. *Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 141 (3d Cir. 2017).

It is evident that Plaintiff is convinced that the Defendants he names in this action wanted to harm him and conspired to kill his dog, Holly. And, if Holly died because Plaintiff was not permitted to contact someone to care for her while he was incarcerated, that is tragic. But the Court must apply the law to the facts alleged and here the allegations are not sufficient to establish a claim for conspiracy under federal law.

### 3.      State Law Claims

Having dismissed Plaintiff's federal claims, the Court "must decline to decide [Plaintiff's] pendant state law claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*,

27

204 F.3d 109, 123 (3d Cir. 2000). Because no exceptions apply here, the Court will not retain jurisdiction over Plaintiff's state law claims for abuse of process, malicious prosecution, malicious arrest, false arrest, invasion of privacy, trespass, intentional infliction of emotional distress, mental anguish and pain and suffering, slander and libel, and common law conspiracy against all Defendants.[26] Thus, the Court declines to exercise supplemental jurisdiction and will dismiss Plaintiff's state law claims as to all Defendants without prejudice without leave to amend. However, Plaintiff may pursue these claims in state court if appropriate. *See Wilkerson v. Superintendent Somerset SCI,* 574 F. App'x 140 (3d Cir. 2014) ("the District Court correctly determined that [Plaintiff's] complaint should be dismissed without leave to amend as none of the facts alleged in the complaint constituted a viable claim"); *Shrieves v. Phila. Facilities Mgmt. Corp.*, No. 19-cv-4865, 2020 WL 7240450, at *13 (E.D. Pa. Dec. 8, 2020) (declining to exercise supplemental jurisdiction over plaintiff's state law claims).

### 4.  Section 1988 Claims

Finally, Plaintiff brings a § 1988 claim against Defendants PrimeCare Medical, Middletown Township, Jason Mancuso, Michael Lubold, and Ashley McCabe. Section 1988 provides that a prevailing party in certain civil rights actions may recover reasonable attorney fees as part of the costs. 42 U.S.C. § 1988; *see also Fox v. Vice*, 563 U.S. 826, 836 (2011) ("[T]he relevant purpose of § 1988 is to relieve defendants of the burdens associated with fending off frivolous litigation.") Here, because Plaintiff has not prevailed on any of his claims,

---

[26] Plaintiff also brings state law claims for violations of the Pennsylvania Constitution against Defendants Middletown Township, PrimeCare Medical, Jason Mancuso, Michael Lupbold, and Ashley McCabe. However, numerous courts have found that there is no single cause of action for an alleged violation of the Pennsylvania Constitution. *See e.g., Brown v. City of Philadelphia*, No. 25-cv-2239, 2025 WL 1933711 (E.D. Pa. July 14, 2025) ("Pennsylvania law does not allow individuals to bring lawsuits seeking damages for violations of the state constitution.") (citing *Jones v. City of Philadelphia*, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006).

28

he may not recover reasonably attorney fees pursuant to § 1988.

## V.   CONCLUSION

For the reasons set forth above, Plaintiff's complaint is dismissed with prejudice,[27]

except for Plaintiff's state law claims which are dismissed without prejudice, as the court is not

exercising supplemental jurisdiction over these claims.  An appropriate order follows.

---

[27] It is within the district court's discretion to dismiss with prejudice if amendment would be inequitable or futile.  *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d. Cir. 2002) ("Dismissal of a pro se plaintiff's complaint without leave to amend is proper under 28 U.S.C. § 1915(e)(2)(B) only when amendment of the complaint would be inequitable or futile.").  Here, the Court finds that further leave to amend would be inequitable against Defendants who have litigated this case since 2023, and defended against four, extremely lengthy Complaints.  *See In re Westinghouse Sec. Litig.*, 90 F.3d 696 (3d Cir. 1996) (citing 5 Wright & Miller, § 1217 at 178 ("[a] dismissal with prejudice [is] appropriate where [a] party refuses to file an amended and simplified pleading")).  Despite the Court's instructions to Plaintiff to use the template found on the Court's website (Doc. No. 51 at 3−4), Plaintiff's TAC remained 103 pages and did not comport with Federal Rule of Civil Procedure 8.  *See* Fed. R. Civ. P. 8; (Doc. No. 60).